Case number 21-7141, LLC SPC Stileks v. The Republic of Moldova, balance. Mr. Smith for the balance, Mr. Byrd for the ability. Mr. Smith, good morning. Whenever you're ready. Good morning. Thank you, Swartz. Your Honor, this case is about the effect of a pending set-aside application on an arbitration award rendered in France. Now, this award was already set aside or annulled once in 2016. That was an appeal to the Court of Cassation. It was reversed, remanded back to the Paris Court of Appeals, who requested the opinion of the Court of Justice of the European Union, who we will call today the CJEU. Now, the CJEU gave its opinion, and then that opinion is binding as to three questions of law that will direct the Paris Court of Appeals to set aside or annul the award. Moldova sought to stay in the district court its enforcement proceedings before the judgment was entered that was denied Moldova appealed, and that's why we're here today. And the issue before this Court, as explained by Moldova, is when there is a binding CJEU ruling that is going to instruct or be binding on the French courts, which are the courts of primary jurisdiction, is it an abuse of discretion to refuse to stay the pending proceedings? That notes the reference to the standard of review is abuse of discretion. Yes, sir. Now, this case has been around a good while, and there have been a good many other cases involving stays, proposed stays, of arbitration orders. In prior versions of this case and others, we laid down those six factors that the district judge is supposed to consider, and the district judge here considered all of them, and it's abuse of discretion standard. What is it that you say is an abuse of discretion? Well, the abuse is in two places. As to the first factor, right, it is the, of course, there is the timeliness of it, the amount of time that has passed, but there are also, you have to consider, the court must consider the avoidance of expensive and protracted litigation. And that wasn't done. It was just the time that passed. Well, how do we not know that there's not going to be still more protracted litigation? You tell us that they're going to follow the court of justice, but this has been up and down a number of times. What is that first factor? Would you read that whole factor to me, please? Sure. It is the general objective of arbitration, which is to, which is, you know, the timeliness as well as the avoidance. That's not the wording. Read the wording.  You're correct. It's not the wording. It is the general objective of arbitration is the first one. And then the two things that are to be considered are the avoidance of protracted and expensive litigation as well as timeliness. And that's not the correct word. But that's exactly what the district judge was doing here. But what's the abuse of discretion? He's trying to cut it off. Protracted litigation has been protracted enough already within his view and in the court's view. And I'm not sure what it is you say is an abuse of discretion. Well, because there are certain facts in France that are binding on the French court. And when it annuls that award… Never mind your view of how the French court should act. We know that it's been through the courts in France, been back and forth several times. But I'm just asking you about this court here. We're not reviewing the French court. Correct. We're reviewing one thing that this court did, and that's deny the state. And I'm not sure what it is you say was an abuse of discretion in denying that state. Right. Well, I know that we're not in review of the French courts, but we have to consider the possibility of the set-aside. And so we have to look at the French courts. And the district court said that this CJEU judgment is binding on the French court as to matters of EU law. And that is a fact that must be taken into account and just was not. And in reality, what the district court relied on was whether or not there would be an additional legal issue under EU law that might arise, when that legal issue had already been decided by the CJEU. So the abuse of discretion is discarding that binding ruling. Mr. Smith, why isn't our, this court's, Stillich's one decision, you know, from 2021, isn't that law of the case here? I mean, we've already said that it was not an abuse of discretion for the district court not to stay proceedings after, you know, 10 some years. And now even more years have elapsed. Right. So why isn't, why isn't it just law of the case? Sure. Well, the reason it's not is if you look at your prior decision, you talked about there is not a fair possibility that this award will be set aside. And things have changed because before then there was no CJEU judgment. And now we have that. And then that has changed the facts that are underlying the request for a stay. And so then there must be a new decision on it. The CJEU doesn't change the facts, right? I mean, doesn't the French court have to apply the law, the CJEU to the specific facts? So the so the European court, the CJEU has set out some legal principles that the French court now has to apply to the record before it. So I'm not sure how we can be certain what might happen in the French courts. Well, you are correct. It is impossible to be certain. But being certain is not what your car requires. Your car talks about the possibility of sense. Yeah. And we're talking about possibilities there. So how can we say a district judge abused his discretion by not following a particular possibility? The standard here is not de novo. We're not supposed to be reviewing this de novo. You're absolutely correct, sir. And I'm not understanding why it's abuse of discretion for the district judge to recognize that possibility. That's not even the prime thing. The first thing is protected litigation. But if we get past the first one and get to the second one, the third, whichever that is, it's still not at all clear to me why you say that's abuse of discretion. Because the district court can't just choose that it's not going to give any comity or respect or weight to this decision by the CJEU. I mean, I agree with you if it is in a situation where, you know, there are numerous facts to be weighed, but this fact wasn't weighed. In reality, it was just rejected. And that's the truth that the parties don't agree on the consequences of the CJEU decision or the application of the law, whether it be international or the EU. Yes. Well, Your Honor, the parties actually do agree that the CJEU ruling is binding as the questions of EU law on the French court. So on that, the parties do agree. Now, silence has raised an argument that it's going to be international law. There will be no other legal conclusions that the Paris Court of Appeals will review. It will only apply the one thing to the facts that have already been established. And the fact that silence raises a potential other outcome doesn't mean that there is no longer any possibility of set aside sufficient to satisfy your standard. But one party is indicating that there needs to be additional factual development of the record in terms of the definition of investment. Yes, Your Honor, there is no support for that in French law. That's more of an allegation that was made in the briefing. The facts were established a long time ago in France. There will be no new fact taking. If there is to be new fact taking, there hasn't been a presentation of the authority that would even allow that. So that's why to us, that's just an argument. And they can make an argument, but that doesn't mean it's persuasive. Sorry. Oh, I'm at a minute and a half. I would like to reserve the remainder of my time for rebuttal, if you don't mind, unless there's other questions. We'll give you some more time. Thank you. Good morning, guys. My name is G. Bird, and I'm here for the L. L. C. Silent. S. P. C. Silex may please the court. The issue is exactly that the issue is whether in this proceedings that have been lingering arise a problem. This dispute that is 20 years old that is lingering in this court in the course of this circuit for eight years and other courts all over the world, whether enough is enough. And the court needs to pursue the execution of the judgment and allow the judgment to move forward. In this case, the courts. The standard for review of this court is abuse of discretion, and abuse of discretion is a very extremely broad standard. Just recently, in the case of Morrissey versus Mayorkas, this court in judge row explained that the court of appeals may not substitute its own judgment for that of the trial court. The abuse of discretion requires that the judgment court to be overruled if the decision is arbitrarily fanciful or clearly, clearly unreasonable. And this standard was, was, was detailed in U.S. McWilliams, 163 F. Second 695, and also in U.S. McWilliams as a criminal context case, but also in other cases. In the cases, in fact, Morrissey versus Mayorkas was a dispute whether the extension should be granted under rule four of the federal rule of civil procedure. The case of Jeffers versus Barr also explains that the review for abuse of discretion does not permit to substitute its judgment for that of the trial court. And the question is exactly what your honors raised. What exactly was the abuse of discretion? And we believe the opposition is that there was no abuse of discretion. The trial court, the district court, went through the first two factors of the Eurocard test. And not only the first two that are required under the status one decision, the previous decision in this case, but also it went through all six factors. And consider the length of the proceedings that was prior to the decision. Consider the anticipated length of the proceedings after that. That would be after the decision, as well as the possibility that the decision will be over. Mr. Because that seems to me to be a bit of a stretch. I would say that the public policy argument does not need to be reached in this particular decision. It's more a way of illustration of what may be coming if the decision, whatever the decision is. But what's important is that even if the decision of the Paris Court of Appeal is set aside, there is still a cessation court, which is the highest court of France. The highest court of the land that already ruled that under the international law, the arbitral tribunal correctly issued the award. The ECJ ruled under the European law. ECJ did not rule under the international law. And Judge Charles pointed out to that. But there was, interestingly enough, there was just recently, a few weeks ago, a copy of the ICSID award. ICSID is the International Center for Resolution here in Washington, D.C., was submitted in the case nine grand holdings versus Spain. That's a case 19-CD-01871, Judge Chotkin. And that award, the copy of that award, exactly made this distinction. It made the distinction between the ECJ decision that makes a decision in Comstroy under EU law and the international law under which tribunal was constituted. And so what I contend, Your Honors, is that Judge Cooper correctly pointed out that the cessation court has already ruled against Moldova. The cessation court, the Supreme Court of France, already ruled against Moldova. And it's just at this point, it just can't be predicted how it's going to rule. Moldova says mere possibility of the award, mere possibility that the award will be set aside warrants the state. But it just can't be true. Any time that the award is issued and the opposing party, the party that contends the award, initiates set-aside proceedings, any time that happens, there is a possibility that the award can be set aside. It doesn't mean that the court here in the United States, the enforcement court, has to state the proceedings. Of course not. That's why there are European factors. That's why there is a discretion of the court here who decides, of the district court who decides, based on the facts of the specifics, facts and circumstances of the case, where the award should be, the enforcement should be set. Do you have any further questions? No further questions? Thank you, Your Honor. Yes. In conclusion, we're asking this court, of course, to affirm the decision of the district court and to deny the state. Thank you. Okay. I would ask one question. You seem to refer to Hinton factors in your case, as opposed to the Yeroka Carr factors that we've used in the Stalick's decision. So is that applicable here? Well, the district court decided that they're not, because these factors, the Hinton factors, they apply when the judgment is already issued, and they apply when the defendant or debtor in that case seeks to state enforcement of the judgment. And that was an argument that was denied by the district court. But so we don't believe that really an issue, and we don't believe that the court needs to go outside of the discretion of the district court. I'm sorry, the Court of Appeals does not need to go outside of the district court for the purposes of this decision. Thank you. Thank you, Your Honor. Thank you, Mr. Berg. Thank you. Thank you for the 30 seconds. So I wanted to go back to the public policy argument that you mentioned, Judge Rao. And, you know, the fact that that is a sign of what is to come means that this case should have been stayed. Because if we're going to be back to that same place where the award is a note, well, in 2016, when the award was a note, this case was stayed for two years. So that's where we're going to be, and that's why the case should be stayed. And if the question is what might happen at the court of cassation, that would be irrelevant. Because once the award is a note by the Paris Court of Appeals, then the case is stayed here. And that goes to us, part of the standard of review, which is, you know, if the decision rests on either a clearly erroneous factual finding or misconstrued factors exercising the court's exercise of jurisdiction. And in this case, that is precisely what has happened. The other thing that I wanted to mention was this ICSID case. Look, ICSID tribunals have nothing to do with this. This is about the French courts and how they and how the EU law is interpreted by the French courts. There is nothing that an international tribunal can say that would be persuasive in this particular context. Other than that, Your Honor, I missed on the first-year par factor. It is the expeditious resolution of disputes and the avoidance of expensive protracted litigation. So I apologize for that, but I wanted to tie that up. If there are no further questions, then I will conclude. Okay. Thank you, Your Honor. Thank you, Mr. Smith.
judges: Rao, Childs, Sentelle